# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 JAN 8 PM 12 51

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

JOHN L. SHAW,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        CV 311-027
                                       )
CALEB AJIBADE, Doctor, Johnson State   )
Prison, et al.,[1]                     )
                                       )
            Defendants.                )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at Johnson State Prison ("JSP") in Wrightsville, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* in this case, which is now before the Court on Defendants' motion for summary judgment. (Doc. no. 26.) Plaintiff has filed a response in opposition to Defendants' motion (doc. no. 33), and Defendants have filed a subsequent reply to Plaintiff's response (doc. no. 34). For the reasons set forth below, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 26), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

As an initial matter, the Court notes that Plaintiff's response in opposition to Defendants' motion for summary judgment (doc. no. 33) does not directly respond to the

---

[1]The **CLERK** is **DIRECTED** to modify the docket in accordance with *Defendants'* recent filings to show the first and last names of each Defendant. (See doc. no. 34, p. 1.)

individual assertions of fact in Defendant's Statement of Material Facts (doc. no. 27) as contemplated by the Local Rules. See Loc. R. 56.1 (instructing parties moving for summary judgment to attach a separate statement of material facts and explaining that "all material facts set forth in the statement . . . will be deemed admitted unless controverted by a statement served by the opposing party"). In fact, the majority of Plaintiff's response appears to simply lament the Court's previous denial of his motion for leave to amend his complaint (doc. no. 32) in light of his having been recently made aware of JSP's protocols for medical treatment, and additionally notes that the "proper defendant [is] not now a party."[2] (Doc. no. 33, pp. 1-2.) Plaintiff does not otherwise attempt to respond to the motion for summary judgment, but instead renews his request for leave to either amend his complaint or to file a "supplemental complaint." (Id. at 3.) Thus, pursuant to Loc. R. 56.1, the facts set forth in Defendants' Statement of Material Facts are deemed admitted. (Doc. no. 27.)

Nonetheless, the Court acknowledges that the mere fact that Plaintiff's response is not responsive to Defendants' assertions of fact, leaving Defendants' motion essentially unopposed, does not entitle the Court to grant the motion without considering the merits. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). Thus, the Court will proceed to establish the factual background for this case

---

[2] As the Court explained in its July 25, 2012 Order, Plaintiff submitted his request to amend his complaint over five months after the deadline for filing motions to amend had passed, and the request was therefore clearly untimely. (Doc. no. 32, p. 2.) Moreover, Plaintiff provided no explanation as to why he could not have learned of the information that motivated him to submit the request sooner than he did. (Id.)

and to consider the merits of Defendants' motion for summary judgment.

## I.     FACTS

Plaintiff began serving his sentence on July 10, 2008, and was initially incarcerated at Georgia Diagnostic and Classification Prison ("GDCP"). (Doc. no. 26-2 (hereinafter "Powel Aff."), ¶ 14.) On March 17, 2010, Plaintiff was transferred to JSP, where he currently remains. (Id. ¶ 44.) Plaintiff's claim in this case concerns the medical care that he received while incarcerated at JSP. Specifically, Plaintiff claimed in his complaint that each named Defendant acted with deliberate indifference towards him concerning the treatment of his Hepatitis C by generally failing or refusing to provide treatment for that condition.[3] (See generally doc. no. 1.) Plaintiff asserted that, due to the Defendants' "pattern of ongoing denying and delaying medical treatment," he has been subjected to a host of medical issues, including liver scarring, cirrhosis, weight loss, mental pain and anguish, loss of sleep, blindness, and yellowing skin. (Id. at 6.) Plaintiff additionally asserted that he explained to each Defendant the nature of his medical issues and his need for treatment, but that Defendants "refused to listen," that Defendant Ajibade yelled at him and denied that he had "any chronic illness for [Hepatitis C]," and that Defendants Powel and Martin were "put on notice of [Plaintiff's] serious medical needs" from the time of his arrival at JSP. (Id. at 5, 8.) In particular, Plaintiff asserted that Defendant Ajibade refused to "carry out treatment" for his Hepatitis C that was allegedly

---

[3]Notably, in a September 28, 2011 Report and Recommendation that was later adopted by the Honorable Dudley H. Bowen, Jr., United States District Judge, the Court recommended that Plaintiff's official capacity claims for monetary damages be dismissed. (Doc. nos. 9, 15.) In a simultaneously entered Order, the Court ordered that service of process be effected on Defendants concerning only Plaintiff's Eighth Amendment claims for deliberate indifference. (Doc. no. 11, p. 3.) Thus, the Court need not address Defendants' arguments concerning any other claims that they perceive Plaintiff as having attempted to bring in his complaint, given that such claims are not a part of this case. (See doc. no. 26-1, pp. 18-22.)

prescribed by a "free world and a medical state specialist" as well as by Dr. Dalrymple, a staff physician at JSP.[4] (Id. at 9; see also doc. no. 26-12 (hereinafter "Dalrymple Aff."), ¶ 3.) Plaintiff also vaguely asserted in his complaint that Defendants indicated to him that treatment for his Hepatitis C was too expensive to be feasible. (Doc. no. 1, p. 9.)

Defendant Ajibade is a physician licensed to practice medicine in the State of Georgia, and is currently employed as the Medical Director at JSP, a position that he has held since January 1, 2010, approximately one month before Plaintiff was transferred to JSP. (Doc. no. 26-11 (hereinafter "Ajibade Aff."), ¶ 3.) As the Medical Director, Defendant Ajibade's responsibilities include supervising the medical staff at JSP, overseeing the medical care of all inmates, approving referrals to specialists, providing scheduled medical care to inmates, providing consultations, supervising clinical visits provided by professional staff, reviewing inmate grievances, and reviewing and approving treatment protocols, clinical policies, and procedures. (Id. ¶ 4.) Defendant Ajibade is familiar with GDC's protocol for treating inmates with Hepatitis C (a term used interchangeably with "HCV"), which is set forth in GDC's Clinical Update 04.03 ("Clinical Update"), as described in more detail infra. (Id. ¶ 8.) Defendant Ajibade adhered to the Clinical Update at all times during his treatment of Plaintiff's HCV, and at no time told Plaintiff that he was not eligible for HCV treatment due to cost. (Id. ¶¶ 8, 42.)

Defendant Powel is currently employed by the Georgia Department of Corrections ("GDC") as a Health Services Administrator at JSP, and has been employed as such since

_____

[4]Contrary to Plaintiff's assertion in his complaint, Dr. Dalrymple never recommended, prescribed, or ordered that Plaintiff receive antiviral treatment or medication for his Hepatitis C, nor is she aware of any such recommendation having been made by anybody else. (Dalrymple Aff. ¶ 15.)

Plaintiff was transferred to JSP. (Powel Aff. ¶ 3.) As the Health Services Administrator, Defendant Powel's responsibilities include overseeing the administrative portion of the health care unit and supervising the medical department heads. (Id. ¶ 4.) Defendant Powel is not a physician or health care provider, and accordingly neither treated Plaintiff nor made any medical decisions regarding the type of treatment he received while incarcerated at JSP. (Id. ¶ 9.) In fact, Defendant Powel does not have the authority to make such decisions, although she may have spoken with Plaintiff regarding any medical decisions that were made concerning his HCV. (Id.) At no time, however, did Defendant Powel tell Plaintiff that he was not eligible for HCV treatment due to cost. (Id. ¶ 10.) Notably, Plaintiff's medical records show that no facility physician, outside doctor, or specialist who treated Plaintiff while he was in the custody of the GDC has ever recommended, ordered, or prescribed antiviral treatment for his HCV. (Id. ¶ 12.)

Defendant Martin is currently employed as a staff Licensed Practical Nurse ("LPN") by the "Medical College of Georgia/Georgia Correctional Health Care at [JSP]," and has been so employed since April 14, 2008. (Doc. no. 26-13 (hereinafter "Martin Aff."), ¶ 2.) As an LPN, Defendant Martin's responsibilities include administering medication, assisting physicians during medical call and emergency services, and providing general health services to inmates. (Id. ¶ 4.) Defendant Martin saw Plaintiff on several occasions between June 2010 and September 2011 for the purposes of administering routine finger stick blood sugar tests and insulin as prescribed by a medical doctor. (Id. ¶ 7.) Such tests are administered daily to patients with diabetes – such as Plaintiff – to manage their diabetic condition, and are unrelated to Plaintiff's HCV. (Id.) Defendant Martin does not recall ever seeing Plaintiff for any reason other than administering those tests, and did not see him, treat him, or have discussions with

him concerning his HCV. (Id. ¶ 9.) Additionally, Defendant Martin does not have the authority to determine whether an inmate is to receive medication or treatment for an HCV infection, and did not tell Plaintiff that he was not eligible for HCV due to cost or for any other reason. (Id. ¶¶ 11, 12.)

As noted above, inmates with Hepatitis C at GDC prisons, including GDCP and JSP, are treated according to specific protocols set forth in GDC's Clinical Update. (Ajibade Aff. ¶ 8; see also Powel Aff., Ex. A-2.) Pursuant to the Clinical Update, inmates with chronic HCV infections are enrolled in the Chronic Illness Clinic ("CIC") at the prison where they are being housed and are monitored in accordance with the Clinical Update. (Ajibade Aff. ¶ 9.) As part of that monitoring process, HCV-infected inmates receive regular blood work, including tests for certain liver enzymes in what is often referred to as a "liver panel." (Id. ¶ 10.) Although antiviral medications can be used to treat some patients with HCV, pursuant to GDC protocol antiviral therapy is only offered to inmates who meet certain criteria indicating that they are medically suitable for such treatment. (Id. ¶ 12.) HCV patients who do not qualify for antiviral therapy are continually monitored in the CIC. (Id.)

Moreover, the use of "Specialized HCV Consultants" – gastroenteroligists specializing in HCV – is mandatory prior to the initiation of any HCV treatment. (Id. ¶ 13.) Pursuant to GDC protocol, only those consultants can recommend that an inmate receive antiviral treatment. (Id.) Additionally, all potential candidates for HCV antiviral therapy are required to undergo a liver biopsy to determine if they are a suitable candidate for antiviral treatment; however, before being referred to a gastroenterologist for a liver biopsy, the Clinical Update requires that the inmate's condition be assessed for contraindications to the antiviral treatment. (Id. ¶ 14.) A contraindication is a reason that a particular treatment is medically inadvisable.

6

(Id.) Finally, GDC's Clinical Update requires GDC clinicians to use a "Hepatitis C Pre-Therapy Checklist" in assessing such contraindications and determining an inmate's candidacy for reference to a gastroenterologist for a liver biopsy and, depending on the results of that biopsy, antiviral treatment. (Id. ¶ 15.) Only those inmates who meet the criteria on the checklist and who are expected to remain in GDC custody for long enough to complete antiviral therapy are considered for antiviral treatment. (Id.)

When Plaintiff arrived at GDCP in July of 2008, he immediately received a diagnostic medical evaluation, the results of which showed that he had a history of Hepatitis C, along with a number of other assorted chronic illnesses and conditions. (Powel Aff. ¶ 14; see also doc. no. 26-8, pp. 16-21.) While at GDCP, Plaintiff underwent numerous other medical examinations, including a "Quantitative HCV RNA viral load test" that demonstrated that Plaintiff had a chronic HCV infection. (Powel Aff. ¶¶ 16, 17.) As a result, Plaintiff was enrolled in the CIC at GDCP and his condition was accordingly monitored. (Id. ¶ 18.) Over the course of his incarceration at GDCP, from July of 2008 through December of 2009, Plaintiff underwent continuous medical treatment, including liver functioning tests, physical exams, urinalyses, blood work, and a liver ultrasound, among a considerable number of other procedures and examinations. (Id. ¶¶ 19-43.) Additionally, Plaintiff was examined and tested by a Dr. Sarmiento, an outside specialist, on numerous occasions, was transferred to Augusta State Medical Prison for an upper endoscopy, and was continually monitored for his chronic illnesses, including his Hepatitis C.[5] (Id.)

_____

[5]Although Defendants have painstakingly catalogued and provided medical records for each instance of medical treatment undergone by Plaintiff over the course of his incarcerations at GDCP and JSP, the Court need not go into the same level of detail, especially given the numerosity of those treatments. (See generally doc. no. 27; see also Powel Aff., Ex. A-1.)

As noted above, Plaintiff was transferred to JSP on March 17, 2010. (Powel Aff. ¶ 43; Ajibade Aff. ¶ 28.) Upon his arrival at JSP, Plaintiff was examined by a member of the medical staff and enrolled in the prison medical unit's CIC for management of his HCV and other chronic illnesses. (Powel Aff. ¶ 43; Ajibade Aff. ¶ 28.) On May 5, 2010, pursuant to his monitoring in the CIC, Plaintiff received blood work, including a Complete Blood Count and a Comprehensive Metabolic Panel, which included tests of Plaintiff's liver enzyme levels. (Ajibade Aff. ¶ 29.) Those tests showed that the two enzyme levels that were tested were normal and slightly elevated, respectively. (Id.)

Defendant Ajibade was aware during Plaintiff's incarceration at JSP that Plaintiff displayed a considerable number of contraindications to antiviral treatment, including: (1) fatty infiltration of Plaintiff's liver, or end stage cirrhosis, as shown by the liver ultrasound performed by a Dr. Marv Pinzon at Bostick State Prison on November 2, 2009; (2) Chronic Lymphocytic Leukemia ("CLL"), a potentially life-threatening condition for which Plaintiff was continually monitored through the CIC; (3) an abnormally low blood platelet count; (4) major depression; and (5) heart irregularities for which Plaintiff refused consultation and treatment. (Ajibade Aff. ¶¶ 16-25; see generally Powel Aff., Ex. A-1.) In short, Plaintiff's overall medical condition indicated that Plaintiff did not, and does not, meet several of the criterion on the GDC Hepatitis C Pre-Therapy Checklist and that, therefore, he was not and is not a suitable candidate for consideration for antiviral treatment. (Ajibade Aff. ¶ 26.) Accordingly, Plaintiff was not referred to a gastroenterologist for a liver biopsy or for consideration of antiviral treatment by a Specialized HCV Consultant. (Id.) Plaintiff's HCV

---

Moreover, Plaintiff has provided no evidence nor pointed to anything in the record contesting that he was provided with the treatment as documented.

has been, however, continually managed pursuant to the Clinical Update during his incarceration at JSP through placement in the CIC, regular visits to the CIC, and monitoring of his liver enzyme levels through periodic blood work. (Id. ¶ 27.)

Defendant Ajibade saw Plaintiff on May 17, 2010 for a CIC visit, during which Plaintiff indicated that he had no problems or complaints and did not otherwise mention or request treatment for his HCV. (Id. ¶ 30.) Plaintiff indicated the same during a subsequent visit with Dr. Dalrymple on November 17, 2010. (Id. ¶ 30; see also Dalrymple Aff. ¶ 16.) Defendant Ajibade saw Plaintiff again on February 9, 2011, and reviewed the results of Plaintiff's recent blood work, which indicated that the two liver enzymes that were measured pursuant to that blood work were normal and slightly elevated, respectively, and that the slightly elevated enzyme had, in fact, declined since his previous test. (Ajibade Aff. ¶ 32.) During an appointment with Plaintiff on February 14, 2011, Plaintiff inquired about treatment for his HCV but indicated that he was afraid of the effect that it might have on his leukemia. (Id. ¶ 33.) In response, Defendant Ajibade explained that Plaintiff's leukemia was a contraindication to antiviral treatment and that such treatment was thus not medically advisable. (Id.) Plaintiff then indicated that he understood and agreed with Defendant Ajibade's recommendation. (Id.)

Notably, neither Defendant Ajibade nor Dr. Dalrymple have observed in Plaintiff any of the injuries that Plaintiff asserts are the result of Defendants' alleged failure to provide treatment for his HCV, nor did Plaintiff complain to either physician about those injuries. (Id. ¶ 39; Dalrymple Aff. ¶ 16.) Specifically, neither physician has observed Plaintiff to have any yellowing or other discoloration of his skin, blindness, weight loss, or stomach swelling or pain. (Ajibade Aff. ¶ 39; Dalrymple Aff. ¶ 16.) In fact, Plaintiff has gained weight since the

beginning of his incarceration at JSP. (Ajibade Aff. ¶ 40; Dalrymple Aff. ¶ 17.) Additionally, Plaintiff underwent an "unremarkable" eye examination approximately one month before filing his complaint, the result of which was a slight modification to his eyeglasses prescription. (Ajibade Aff. ¶ 41.) Given that HCV is a slowly progressing disease, the one-year period of time that elapsed between Plaintiff's transfer to JSP and the filing of his complaint was not a sufficient amount of time to have affected Plaintiff in the manner that he alleges he was affected. (Id. ¶ 43.) Any cirrhosis of Plaintiff's liver was caused by his HCV – and, possibly, by his lifestyle choices – rather than any alleged delay in treatment while incarcerated at JSP. (Id.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Applicable substantive law identifies which facts are material in a given case.[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the

_____

[6]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B.    Merits of Plaintiff's Claims

As noted above, Plaintiff contends that he received inadequate medical treatment due to Defendants' actions, and that Defendants were therefore deliberately indifferent to his

11

serious medial needs in violation of his Eighth Amendment constitutional rights. (See generally doc. nos. 1, 33.) Defendants argue that Plaintiff has failed to offer sufficient evidence in support of his claims of deliberate indifference, and additionally assert that they are entitled to qualified immunity. (See generally doc. no. 26-1.)

To prevail on a claim of deliberate indifference to serious medical needs, Plaintiff must show: (1) that he had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that his injury was caused by Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (noting that a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim).

To satisfy the requirement of showing an objectively serious medical need, a prisoner must show that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994)). To show that Defendants were deliberately indifferent to his medical needs, Plaintiff must offer proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id.

In addition, as a prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill, 40 F.3d at 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536

U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003)

("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme

Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what

constitutes a serious medical need of prisoners."). Whether such delay amounts to deliberate

indifference to a serious medical need depends on the length of the delay as well as "the nature

of the medical need and the reason for the delay." Farrow, 320 F.3d at 1247.

Furthermore, "not every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment." Farrow, 320 F.3d at 1243. The Eighth

Amendment does not mandate that the medical care provided to the prisoner "be perfect, the

best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991)

(quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme

Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute
> "an unnecessary and wanton infliction of pain" or to be "repugnant to the
> conscience of mankind." Thus, a complaint that a physician has been negligent
> in diagnosing or treating a medical condition does not state a valid claim of
> medical mistreatment under the Eighth Amendment. Medical malpractice does
> not become a constitutional violation merely because the victim is a prisoner.
> In order to state a cognizable claim, a prisoner must allege acts or omissions
> sufficiently harmful to evidence deliberate indifference to serious medical
> needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or

malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-

72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth

Amendment liability); Harris, 941 F.2d at 1505.

With these principles in mind, the Court turns its attention to Defendants' motion for

13

summary judgment on Plaintiff's claim.

Here, in light of his condition, Plaintiff has clearly shown that he has a serious medical need, given that courts have specifically acknowledged that Hepatitis C is a serious medical condition. See Brown v. Johnston, 387 F.3d 1344, 1351 (11th Cir. 2004) (noting that hepatitis meets the established definition for a serious medical need). Moreover, Defendants "acknowledge that Plaintiff's HCV is a serious medical need." (Doc. no. 26-1, p. 13.) Thus, the Court's analysis of Defendants' motion for summary judgment will turn solely on whether or not, in light of Plaintiff's serious medical need, Defendants acted with deliberate indifference to Plaintiff's condition.

### 1.    No Deliberate Indifference on the Part of Defendant Ajibade

As noted above, Plaintiff claims that Defendants acted with deliberate indifference towards his serious medical needs by generally denying him medical treatment for his Hepatitis C. (See doc. no. 1, pp. 5-9.) Plaintiff claims that Defendant Ajibade in particular acted with deliberate indifference by failing to follow the alleged treatment recommendations of either one or two unidentified "specialists" and Dr. Dalrymple. (Id.) The Court finds, however, that Plaintiff has failed to show that Defendant Ajibade acted with deliberate indifference to his serious medical need in any way. First, as summarized above, and as set forth in the substance of Defendants' brief and demonstrated by the copious medical records attached to Defendant Powel's affidavit, Plaintiff has received an abundance of medical treatment for his various chronic conditions, including his Hepatitis C, over the course of his incarceration at JSP. (See generally doc. no. 26-1; see also Powel Aff., Ex. A-1.) In providing that medical treatment, Defendant Ajibade followed the guidelines of the Clinical Update, which directed that Plaintiff

14

be enrolled in the CIC and be appropriately monitored. (Ajibade Aff. ¶¶ 8-9.) While being so monitored, Plaintiff exhibited, and Defendant was aware of, a host of contraindications to antiviral treatment for Hepatitis C, including end stage cirrhosis, leukemia, a low blood platelet count, major depression, and heart irregularities. (Ajibade Aff. ¶¶ 16-25; see generally Powel Aff., Exs. A-1 and A-2.) Based on those contraindications, Plaintiff failed to meet the criteria on the Hepatitis C Pre-Therapy Checklist for antiviral treatment for Hepatitis C, and Defendant Ajibade accordingly did not refer him to a gastroenterologist for a liver biopsy or to a Specialized HCV Consultant for consideration of antiviral treatment. (Ajibade Aff. ¶¶ 16, 26.) In short, Defendant Ajibade's adherence to the guidelines of the Clinical Update – and his associated refusal to refer Plaintiff for consideration for treatment to which Plaintiff exhibited contraindications – simply does not exhibit the sort of disregard of a serious medical risk that a successful claim for deliberate indifference requires. Goebert, 510 F.3d at 1326.

Moreover, when Plaintiff inquired about such treatment on February 14, 2011, he expressed unprompted reservations about the treatment based on his worry that it might have a negative impact on his leukemia. (Id. ¶ 33.) In response, Defendant Ajibade confirmed that Plaintiff's reservations were justified and informed him that his leukemia was indeed a contraindication to antiviral treatment. (Id.) Plaintiff then indicated that he understood and agreed with Defendant Ajibade's recommendation. (Id.) Put simply, Defendant Ajibade clearly considered the wealth of available medical information concerning Plaintiff's various conditions and properly concluded, per the strictures of Clinical Update 4.03, that Plaintiff was not a viable candidate for antiviral treatment. Again, such a conclusion is indicative only of a methodical consideration of Plaintiff's full medical profile and treatment options; it is *not*,

in other words, indicative of deliberate indifference. Goebert, 510 F.3d at 1326.

As to Plaintiff's claim that Defendant Ajibade failed to provide treatment for his Hepatitis C as allegedly recommended by Dr. Dalrymple and two other specialists, that claim also fails to demonstrate that Defendant Ajibade acted with deliberate indifference to a serious medical need. In direct contravention of the bald claim in Plaintiff's complaint, the medical records do not show that any such recommendation was ever made by Dr. Dalrymple or by another physician or specialist. (See generally Powel Aff., Ex. A-1.) Based on the recommendation of Dr. Sarmiento, Dr. Dalrymple did request that Plaintiff's liver be imaged, but the ultimate results of that imaging were that Plaintiff's liver exhibited end stage cirrhosis, a contraindication to antiviral treatment. (Dalrymple Aff. ¶¶ 13, 14.) Accordingly, Dr. Dalrymple did not recommend or prescribe that Plaintiff be given that treatment; in fact, given that she was not and is not a gastroenterologist or Specialized HCV Consultant, she was not and is not authorized to make such recommendations under the relevant GDC protocol. (Id. ¶ 15.) Notably, Plaintiff does not point to any evidence in the medical record indicating that any person – physician, "free world" specialist, gastroenterologist, or otherwise – ever recommended that he be given antiviral treatment. In the absence of such a recommendation, it logically follows that Defendant Ajibade could not have somehow failed to abide by that non-existent recommendation. In fact, given that only a gastroenterologist or Specialized HCV Consultant can recommend that an inmate receive HCV antiviral treatment, Defendant Ajibade's treatment options were limited to referring Plaintiff to such a physician, which he properly refrained from doing in light of Plaintiff's contraindications and the guidelines of the Clinical Update. (Ajibade Aff. ¶¶ 36-37.)

Moreover, even if Defendant Ajibade *had* ignored a recommendation by Dr. Dalrymple or another specialist, Plaintiff still would not be able to support his claim for deliberate indifference, given that his claim amounts to, if anything, a mere disagreement with Defendant's medical judgment. Notably, such disagreement with a physician's medical judgment is simply inadequate to support a claim for deliberate indifference. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (noting that a "simple difference in medical opinion" does not rise to the level of constitutional violation). The crux of Plaintiff's complaint is that, based on either his own judgment or the supposed recommendations of Dr. Dalrymple and two unnamed specialists, Defendant Ajibade should have provided Plaintiff with a certain treatment for his Hepatitis C. (See doc. no. 1, pp. 5-9.) Defendant Ajibade, however, took into consideration the totality of Plaintiff's medical condition and employed his own medical judgment to arrive at the legitimate conclusion that, pursuant to the Clinical Update, Plaintiff was not a viable candidate for antiviral treatment for Hepatitis C. Plaintiff's complaint makes clear that, despite previously indicating that he understood and agreed with Defendant Ajibade's recommendation (Ajibade Aff. ¶ 33), he simply disagrees with Defendant Ajibade's decision. As noted, such a disagreement does not support a claim for deliberate indifference. Waldrop, 871 F.2d at 1033.

In sum, Plaintiff has failed to demonstrate a genuine dispute as to a material fact concerning his claim that Defendant Ajibade acted with deliberate indifference to his serious medical need. In fact, Defendant Ajibade's actions support just the opposite conclusion: he enrolled Plaintiff in the CIC at JSP, monitored his various conditions, ensured that he received the appropriate tests, and properly found that Plaintiff's contraindications to antiviral treatment

for Hepatitis C precluded such treatment. Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's claim that Defendant Ajibade acted with deliberate indifference to his serious medical needs.

### 2. No Deliberate Indifference on the Part of Defendants Martin and Powel

Plaintiff's claim that Defendants Martin and Powel acted with deliberate indifference to his Hepatitis C is equally unavailaing. As noted above, Defendant Martin was employed as an LPN at JSP, and the extent of her interaction with Plaintiff consisted of the few occasions on which she administered to him routine finger stick blood sugar tests and insulin as prescribed by a medical doctor in order to treat his diabetes. (Martin Aff. ¶¶ 2, 7.) Moreover, Defendant Martin did not see, treat, or speak with Plaintiff concerning his Hepatitis C or his intent to seek treatment for it. (Id. ¶ 9.) In fact, Defendant Martin had no authority to determine Plaintiff's treatment plan for Hepatitis C, nor did she play any part, either directly or indirectly, in the decision not to provide him with antiviral treatment. (Id. ¶¶ 10, 11.) In other words, Defendant Martin had absolutely no involvement with or responsibility for Plaintiff's treatment for his Hepatitis C: she did not administer any treatment in connection to that condition, did not discuss his condition with him, and had no decision-making authority concerning treatment for his condition. Defendant Powel was the Health Services Manager at JSP during the timeframe relevant to Plaintiff's claims, and as such was responsible for overseeing the administrative portion of the health care unit as well as supervising the medical department heads. (Powel Aff. ¶¶ 3, 4.) Defendant Powel, however, is neither a physician nor a health care provider, and did not have the authority to recommend that Plaintiff be considered

for antiviral treatment or to generally prescribe treatment for inmates with Hepatitis C. (Id. ¶ 8.) Accordingly, Defendant Powel neither treated Plaintiff nor made any medical decisions concerning his treatment, although she may have spoken to him concerning any decisions that *were* made by other parties with respect to his Hepatitis C. (Id.)

Plaintiff has not shown that either Defendant Martin nor Powel acted with deliberate indifference to his Hepatitis C, especially in light of their attenuated and, in the case of Defendant Martin, non-existent, connection to the treatment of that condition. Although it can be assumed that they were each aware of Plaintiff's Hepatitis C, Plaintiff has not demonstrated that they had any subjective awareness of a need for treatment beyond routine monitoring pursuant to the Clinical Update, nor that any such need even existed. See Goebert, 510 F.3d at 1326. In other words, Plaintiff has not demonstrated that Defendants Martin and Powel in any way disregarded a serious medical risk to Plaintiff's health of which they were subjectively aware. Id. Although Plaintiff vaguely alleged in his complaint that he explained to all three Defendants that he needed treatment for Hepatitis C, he does not provide any supporting facts, nor point to anything in the medical record, to substantiate that allegation or to otherwise explain the circumstances of that conversation.

Moreover, to the extent that Plaintiff attempted to argue in his complaint that Defendants Martin and Powel were put on notice of his need for treatment based on the various injuries that he alleged he suffered (doc. no. 1, pp. 5-9), his claims concerning those injuries are belied by the medical records, which show that he underwent no significant change in vision, that he, in fact, *gained* weight, and that he never complained to any Defendant about

any of his alleged injuries.[7]  (See generally Ajibade Aff.; Martin Aff.; Powel Aff., Ex. A-1.)

Finally, even if Plaintiff *had* effectively communicated his complaints to Defendants Martin

and Powel, as exhaustively discussed above, Plaintiff was already subject to ongoing and

abundant medical examinations and monitoring pertaining to each of his medical conditions,

including his Hepatitis C, and was ineligible for the treatment that he sought due to a number

of contraindications.  In short, Plaintiff has not demonstrated a genuine dispute as to a material

fact concerning his claim that Defendants Martin and Powel acted with deliberate indifference

to his serious medical need, and Defendants' motion for summary judgment should be granted

as to that claim as well.[8]

## III.    CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that  Defendants' motion for

---

[7]Similarly, to the extent that Plaintiff's claim for deliberate indifference is based on a delay in treatment, the Court notes that, as explained supra Part II.B, "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Hill, 40 F.3d at 1188.  Here, however, Plaintiff has made absolutely no effort to point to any such verifying medical evidence (see generally doc. no. 33), and the medical evidence that *has* been provided – in addition to the affidavits of Defendant Ajibade and Dr. Dalrymple – directly contradicts Plaintiff's bald assertions of injury (see Ajibade Aff.¶¶ 39-43; Dalrymple Aff. ¶¶ 16-17; Powel Aff., Ex. A-1).  Indeed, Defendant Ajibade specifically stated that the "elapse of time between [Plaintiff's] arrival at [JSP] in March 2010 and the filing of his lawsuit in April 2011 - just over one year - has had no detrimental effect on his HCV infection" (Ajibade Aff. ¶ 43), and Plaintiff has not produced any verifiable evidence to counter that statement.  Thus, Plaintiff has not shown that any delay in treatment had any detrimental effect on his health.  Accordingly, the Court finds that, to the extent that Plaintiff's claim is based on a delay in treatment, Plaintiff has not demonstrated a genuine dispute of material fact as to that claim, and Defendants' motion for summary judgment should therefore be granted as to that claim as well.

[8]In light of the Court's conclusion that Defendants are entitled to summary judgment for the reasons set forth above, it is unnecessary to address the merits of Defendants' qualified immunity argument.  (Doc. no. 26-1, pp. 22-23.)

summary judgment be **GRANTED** (doc. no. 26), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 8th day of January, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE